# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHELLE RENEE LAMB,
a/k/a THOMAS LAMB

*Plaintiff,*

vs.                                              Case No. 16-3077-EFM-DJW

JOE NORWOOD, JOHNNIE GODDARD,
PAUL CORBIER, KANSAS
DEPARTMENT OF CORRECTIONS, and
CORIZON HEALTH SERVICES,

*Defendants.*

## MEMORANDUM AND ORDER

Michelle Renee Lamb is currently serving three consecutive life sentences for two counts of kidnapping and one count of murder. Michelle Renee was born Thomas Preston; she changed her name in 2007.[1] She has been diagnosed with gender dysphoria; although she was born a biological male, she considers herself female. Michelle brings this action against the Kansas Department of Corrections ("KDOC"); Joe Norwood,[2] the Secretary of Corrections, in his

---

[1] The Court follows KDOC's approach and uses female pronouns when referring to Michelle.

[2] At the time Lamb filed this action, Johnnie Goddard was the acting Secretary of Corrections for the Kansas Department of Corrections. That position is now held by Joe Norwood, who is automatically substituted as a party in this case to the extent that Lamb sued Goddard in his official capacity. *See* Fed R. Civ. P. 25(d).

official capacity; Johnnie Goddard,[3] Deputy Secretary of Corrections, in his individual capacity; Corizon Health Services; and Dr. Paul Corbier. She asserts that the Defendants are violating the Eighth Amendment's prohibition against cruel and unusual punishment by failing to adequately treat her gender dysphoria. She also alleges that her constitutional rights are being violated by the conditions of her confinement. Accordingly, she seeks declaratory and injunctive relief. Specifically, she seeks more comprehensive treatment of her gender dysphoria, access to more female items in prison, recognition of her name change, and transfer to a female-only prison facility.

Corizon and Dr. Corbier have each filed a motion for summary judgment (Docs. 35 and 38), arguing that they are not violating the Eighth Amendment because they are not deliberately indifferent to Lamb's medical needs. KDOC, Norwood, and Goddard (the "Prison Officials") have also filed a motion for summary judgment (Doc. 46). They also argue that Lamb cannot demonstrate deliberate indifference to her medical needs. Furthermore, they contend that Lamb's conditions of confinement are constitutional. For the reasons stated below, the Court agrees with the Defendants and grants all three motions for summary judgment.

I.  **Factual and Procedural Background**[4]

In December 1969, Thomas Lamb abducted and murdered a young woman named Karen Sue Kemmerly. Shortly thereafter, in January 1970, Thomas Lamb abducted another young woman named Patricia Ann Childs and sought a ransom in exchange for her release. While in Thomas Lamb's custody, Childs' hands were bound and on several occasions, she was forced to

---

[3] Because Lamb also alleges that Goddard violated her rights in his individual capacity, he remains a defendant to that extent.

[4] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

engage in sexual intercourse with Thomas.  Shortly after the ransom was paid and Childs was released, Thomas Lamb was apprehended.  Thomas Lamb was convicted of two counts of kidnapping and one count of first degree murder, and is now serving three consecutive life sentences in prison.

While in prison, Thomas Preston Lamb began going by Michelle Renee Lamb.  And in 2007, that name change was made official.  Michelle Lamb has been diagnosed with gender dysphoria: she was born a biological male, but self identifies as a female transsexual.  Lamb is in the custody of the KDOC.  At the time she filed this action, Johnnie Goddard was the acting Secretary of Corrections.  Currently, that position is held by Joe Norwood.  KDOC contracts with Corizon to provide medical care to its inmates.  Since either 2012 or 2014,[5] Lamb has been seen by Dr. Paul Corbier.  Dr. Corbier is Corizon's Regional (Kansas) Medical Director.

Lamb receives weekly counseling and therapy sessions.  Every week, she meets with Brandon Pratt, a licensed psychologist employed by Corizon.  She also receives hormone treatments.  Specifically, she takes estrogen and a testosterone-blocking medication.  Dr. Corbier asserts that he and a panel of practitioners have deemed that Lamb's treatment is appropriate.  In January 2016, Lamb was allowed access to jewelry—specifically earrings—and was also given female undergarments.  Pratt explains that access to these items is meant to be therapeutic for Lamb's gender dysphoria.  Dr. Corbier stated that Lamb's condition will not decline if her current treatment regimen continues, and in his opinion, "the relative risks and benefits of sexual reassignment surgery render surgery [an] impractical and unnecessary option when more conservative therapies are available and effective."

---

[5] The parties disagree as to when Dr. Corbier's involvement began.

Lamb does not feel that her gender dysphoria is being treated.  Lamb contends that the weekly sessions and hormone treatments only treat the depression that results from her untreated gender dysphoria.  She claims that various medical doctors and gender dysphoria experts recommend that she receive much more comprehensive treatment.  She also asserts that the treatment she is currently receiving falls short of the standard of care set forth by the World Professional Association for Transgender Health ("WPATH").

Lamb brings this action under § 1983 against Corizon, Dr. Corbier, and the Prison Officials.  She alleges that the current treatment that she is receiving for her gender dysphoria violates her Eighth Amendment rights.  She seeks injunctive relief, asking the Court to direct that the Defendants provide Lamb with treatment conforming to the WPATH's standard of care.  That treatment would include (1) castration surgery; (2) transfer to a female prison facility; (3) a name change on all of KDOC's official documents; (4) genital sex reassignment surgery; (5) access to all canteen and property items that are currently available to female inmates; (6) female voice therapy, electrolysis, and/or laser hair removal; and (7) an adjustment of Lamb's hormone therapy.

Dr. Corbier and Corizon have each filed a motion for summary judgment.  The Prison Officials have also filed a motion for summary judgment.  In their motions, all of the Defendants argue that the facts show that they are not deliberately indifferent to Lamb's medical condition because she is receiving adequate treatment.  Furthermore, the Prison Officials also argue that Lamb's constitutional rights are not violated by the conditions of her confinement.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[7] The moving party bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[8] If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" from which a rational trier of fact could find for the non-moving party.[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[10] To survive summary judgment, the non-moving party's evidence must be admissible.[11] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[12]

Lamb is proceeding pro se. The Court therefore reviews her pleadings, including those related to Defendants' motion, "liberally and holds them to a less stringent standard than those

---

[6] Fed. R. Civ. P. 56(a).

[7] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

[9] *Id.* (citing Fed. R. Civ. P. 56(e)).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

[11] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[12] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

drafted by attorneys."[13] The Court, however, cannot assume the role of advocate for the pro se litigant.[14] Likewise, Lamb's pro se status does not relieve her from the obligation to comply with procedural rules, including the Federal Rules of Civil Procedure.[15]

### III. Analysis

Lamb seeks declaratory and injunctive relief under 42 U.S.C. § 1983. Section 1983 is not a source a substantive rights; it merely provides a mechanism for enforcing rights secured elsewhere under federal law.[16] And so to invoke § 1983, Lamb must first show that she has been deprived of a right secured under federal law.[17] Specifically, she alleges that all of the defendants are violating her Eighth Amendment rights by failing to acknowledge and treat her serious medical condition. She also alleges that the conditions of her confinement are violating her constitutional rights. She seeks an injunction directing the Defendants to properly treat her condition, and requests changes to the condition of her confinement, primarily, transfer to a female-only facility.

**A.  Lamb's hormone treatments and weekly therapy sessions do not violate the Eighth Amendment.**

Lamb contends that all of the Defendants are violating her Eighth Amendment rights by treating her in a manner that falls short of WPATH standards. She asserts that the Eighth

---

[13] *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (quotations omitted).

[14] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

[15] *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2002).

[16] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[17] 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3573.2, 568 (3d ed. 2008) (noting that to prevail on a § 1983 claim, a plaintiff must show "that he has been deprived of a right secured by an appropriate federal law.").

Amendment requires that she receive the following treatments: castration surgery; genital sex reassignment surgery; female voice therapy, electrolysis, and/or laser hair removal; and an adjustment to the hormone treatment that she is currently receiving. She argues that anything short of the above treatments—such as the care she is currently receiving—constitutes deliberate indifference to her medical needs in violation of the Eighth Amendment.

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment."[18] The deliberate indifference standard involves two components: "an objective component requiring that the pain of deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind."[19] For the purposes of this motion only, the defendants concede that the deprivation of gender dysphoria treatment is sufficiently serious. Therefore, their motion turns on the subjective component.

"A mere 'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.' "[20] Nor does a prisoner's disagreement with a diagnosis or prescribed course of treatment constitute an Eighth Amendment violation.[21] "Where a doctor 'orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is

---

[18] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

[19] *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

[20] *Jackson v. Clowers*, 83 F. App'x 990, 993 (10th Cir. 2003) (quoting *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999)).

[21] *Id.* (citing *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)).

unwarranted under [Tenth Circuit] case law.' "²² With that in mind, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."²³

The Defendants argue that they acknowledge and are treating Lamb's condition. Dr. Corbier—a board certified medical doctor—asserts that he is aware of Lamb's gender dysphoria diagnosis. He asserts that her diagnosis and treatment regimen has been reviewed and approved by a panel of practitioners that includes specialists in psychiatry and behavioral psychology. Lamb receives weekly counseling and therapy sessions, hormone treatments, and has been provided access to female clothing and accessories, which Brandon Pratt—Corizon's psychologist—claims is intended to be therapeutic. Dr. Corbier states that Lamb's condition will not decline if her current treatment regimen continues. In Dr. Corbier's opinion, "the relative risks and benefits of sexual reassignment surgery render surgery [an] impractical and unnecessary option when more conservative therapies are available and effective."

Lamb attempts to controvert many of Dr. Corbier's assertions, but she mostly does so improperly. Under Rule 56 of the Federal Rules of Civil Procedure, a party attempting to controvert a fact must do so by "citing to particular parts of materials in the record."²⁴ This District's local rules also require that in a memorandum opposing summary judgment, "[e]ach fact in dispute must be numbered by paragraph, [and] refer with particularity to those portions of

---

²² *Toler v. Troutt*, 631 F. App'x 545, 548 (10th Cir. 2015) (quoting *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006)).

²³ *Self*, 439 F.3d at 1232.

²⁴ Fed. R. Civ. P. 56(c)(1)(A).

the record upon which the opposing party relies."[25]  Lamb mostly fails to cite to the record with any degree of particularity in attempting to controvert the Defendants' facts.  Nevertheless, Lamb did support her complaint with a declaration that she swore to under penalty of perjury.  Such a document can be treated as an affidavit and serve as evidence in consideration of a motion for summary judgment.[26]  And so the Court will look to Lamb's declaration to see if a genuine dispute of material fact exists.

Lamb primarily attempts to controvert the assertions of Pratt and Dr. Corbier by arguing that the weekly sessions and hormone treatment only treat depression, and not gender dysphoria.  She claims that other medical professionals have told her that her hormone dosage is too low and have recommended gender reassignment surgery.  She sets forth various opinions and recommendations related to both her and other individuals' gender dysphoria.  Ultimately, she asserts that her treatment falls short of the standard set forth by various experts as well as the WPATH standard of care.  Therefore, she argues that the treatment she is receiving is wholly inadequate.

But under Tenth Circuit precedent, Lamb's treatment satisfies the Eighth Amendment.  In 1986, the Tenth Circuit decided *Supre v. Rickets*.[27]  In *Supre*, the Court noted that prison officials must provide treatment to transgender prisoners.[28]  But the Court also noted that in that case, the prison was justified in withholding hormone treatment.[29]  Specifically, the Court stated:

---

[25] D. Kan. R. 56.1(b)(1).

[26] *Lewis v. Carrell*, 2014 WL 4450147, at *3 (D. Kan. 2014).

[27] 792 F.2d 958 (10th Cir. 1986).

[28] *Id.* at 963.

[29] *Id.*

> While the medical community may disagree among themselves as to the best form of treatment for plaintiff's condition, the Department of Corrections made an informed judgment as to the appropriate form of treatment and did not deliberately ignore plaintiff's medical needs. The medical decision not to give plaintiff estrogen until further study does not represent cruel and unusual punishment.[30]

In her response to the motions for summary judgment, Lamb states that "[e]very conjecture made in *Supre v. Ricketts*, has now been debunked by the Medical and Behavioral Science Community through scientific & Medical research in gender identity disorder." But the Tenth Circuit has favorably cited *Supre* as recently as 2015 in *Druley v. Patton*.[31] In *Druley*, the Tenth Circuit considered an argument similar to that advanced by Lamb.[32] Specifically, the prisoner in *Druley* argued that treatments that fell short of WPATH's standard of care violated her Eighth Amendment rights.[33] The Court noted that "[t]he WPATH Standards of Care are intended to provide *flexible directions for the treatment*" of gender dysphoria.[34] *Druely* reflects the reality that the treatment of gender dysphoria is a highly controversial issue for which there are differing opinions. Dr. Corbier exercised his medical judgment to determine a course of treatment for Lamb, and in doing so, he has not violated her Eighth Amendment rights.[35] Lamb obviously

---

[30] *Id.*

[31] 601 F. App'x 632 (10th Cir. 2015).

[32] *Id.* at 633 (noting that the plaintiff is "seeking a court order directing the [] defendants to raise her hormone medications to the levels recommended by the Standards of Care established by the World Professional Association for Transgender Health (WPATH), allow her to wear ladies' undergarment, and move her to a non-air-conditioned building to alleviate asthma symptoms.").

[33] *Id.*

[34] *Id.* at 635 (quoting *Kosilek v. Spencer*, 774 F.3d 63, 70 n.3, 86, 88 (1st Cir. 2014)) (internal quotation marks omitted) (emphasis in orginal).

[35] Lamb also asserts that *Supre* and *Druley* have been overruled by the case *O'Donnabhain v. Commissioner of Internal Revenue*, 134 T.C. 34 (T.C. 2010). In that 2010 case, the United States Tax Court determined that hormone treatment and sex reassignment surgery were tax deductible expenses for medical care. *Id.* at 65-66. Obviously, this 2010 decision regarding tax-deductible expenses does not overturn a 2015 Tenth Circuit

disagrees with Dr. Corbier's treatment decisions, but "disagreement does not give rise to a claim for deliberate indifference to serious medical needs."[36]

Because the Defendants have recognized Lamb's medical condition and are treating her for it, they have not been deliberately indifferent towards her medical needs. Accordingly, the treatment of Lamb's gender dysphoria does not violate the Eighth Amendment.

**B.     Lamb's conditions of confinement do not violate the Constitution.**

Lamb also objects to certain conditions of her confinement. She seeks an injunction ordering the Prison Officials to provide her access to all female canteen and property items in prison and to refer to her as Michelle, and not Thomas. She also seeks transfer to an all-female prison facility. The Prison Officials seek summary judgment, arguing that Lamb's conditions of confinement satisfy the Constitution.

*1.     Canteen and Property Items*

With regards to the canteen and property items, the record shows that Lamb was given access to jewelry and women's undergarments. But Lamb requests more. She wants access to all prison property items that are listed as "female only." This property apparently include items such as mascara and eye shadow. Deprivation of access to items such as those does not rise to the level of a constitutional violation. "The Eighth Amendment protects inmates from deprivation 'of the minimal civilized measure of life's necessities.' "[37] "[C]onditions of confinement violate the Eighth Amendment if they result in 'serious deprivations of basic human

---

case that addresses the precise issue that is now before the Court. This irrelevant and non-binding opinion has no influence in this case.

[36] *Perkins*, 165 F.3d at 811.

[37] *Jackson v. Wilkinson*, 671 F. App'x 717, 718 (10th Cir. 2016) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

needs.' "[38] Basic human needs include "shelter, sanitation, food, personal safety, and medical care."[39] Mascara, eye shadow, and other such items are not basic human needs. Even in an all-female prison full of biological females, the Eighth Amendment would not require inmate access to cosmetics. There is no such requirement in this case, either.

   2.  *Name Change*

As noted above, Thomas Preston Lamb has legally changed her name to Michelle Renee Lamb. She now requests that that change be reflected in all of KDOC's official documents. The Constitution does not require such an accommodation.

At the outset, Lamb's request fails to give rise to any constitutional right.[40] But even if it did, KDOC was acting pursuant to a regulation that provides that while incarcerated, a prisoner must respond to the name under which she was convicted.[41] If a prisoner has legally changed her name, the new name is reflected as an alias in parentheses after the convicted name.[42] "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[43] Here, the Prison Officials argue the relevant KDOC regulation exists "[f]or record-keeping purposes and to reduce confusion," which

---

[38] *Savage v. Fallin*, 663 F. App'x 588, 592 (10th Cir. 2016) (quoting *Rhodes*, 452 U.S. at 347).

[39] *Id*. (quoting *Ramos v. Lamm*, 639 F.2d 559, 566 (10th Cir. 1980)) (internal quotation marks omitted).

[40] *Kirwan v. Larned Mental Health*, 816 F. Supp. 672, 674 (D. Kan. 1993) ("In the present case, however, the court finds no constitutional right at issue. Plaintiff changed his name for personal reasons, and he complains of prison regulations which interfere with his desire to referred to by his new name.").

[41] K.A.R. 44-12-506.

[42] K.A.R. 44-12-506.

[43] *Turner v. Safely*, 482 U.S. 78, 89 (1987).

constitutes a legitimate penological interest. Moreover, the legitimacy of such regulations has been recognized by this and other federal courts.[44]

   3.   *Transfer to a Female Facility*

Finally, Lamb is not entitled to transfer to a female facility. "Inmates do not have a constitutional right to choose their place of confinement."[45] And although Lamb argues that "transfer does not raise serious safety and security concerns," the Court cannot overlook the heinous crimes for which Lamb is serving three life sentences. Thomas Lamb murdered Karen Sue Kemmerly—a woman. Shortly thereafter, he kidnapped Patricia Ann Childs—another woman—and forced her to have sex with him while she was held against her will. Thomas was ordered to serve three life sentences so that he would never kill or hurt another woman again. Thomas is now Michelle, but Michelle is still a convicted kidnapper and murderer of women, and the justification for her sentence has not changed.

"Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel . . . . Accordingly, we have held that even when an institutional restriction infringes on a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."[46]

---

[44] *See United States v. White*, 2011 WL 13174484, at *1 (D. Kan. 2011); *Strope v. Gibbens*, 2003 WL 1906458, at *5 (D. Kan. 2003); *Kirwan*, 816 F. Supp. at 673-74; *see also Matthews v. Morales*, 23 F.3d 118 (5th Cir. 1994).

[45] *United States v. Neighbors*, 2012 WL 2449865, at *1 (D. Kan. 2012); *see also Cox v. Fluery*, 2009 WL 3011221, at *5 (W.D. Mich. 2009) ("A prisoner has no right under federal law to compel or prevent a transfer to another facility."); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D. Kan. 1986) ("Even though a transfer may relieve plaintiff's anxieties, clearly a violation of the women's rights would be at issue.").

[46] *Bell v. Wolfish*, 441 U.S. 520, 547 (1981).

KDOC has determined that the transfer of Michelle to a female facility would give rise to safety and security concerns. The Court has no reason to upset that determination.[47]

## IV. Conclusion

The Defendants have an obligation to treat Lamb's gender dysphoria, but they are not obligated to treat it in the specific manner that Lamb prefers. Gender dysphoria is a sensitive and highly debated topic in today's society, and if she were not in prison, Lamb would be free to seek whatever treatments and lifestyle changes that she felt were necessary. But she is not free: she is serving three consecutive life sentences for kidnapping and murder. And to the extent that the treatment she is receiving falls of short of what she feels that she needs, such limitations, even if restrictive or harsh, "are part of the penalty that criminal offenders pay for their offenses against society."[48]

**IT IS THEREFORE ORDERED** that Defendant Paul Corbier's Motion for Summary Judgment (Doc. 35) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Corizon Health Services's Motion for Summary Judgment (Doc. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Joe Norwood's, Johnnie Goddard's, and the Kansas Department of Corrections's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

---

[47] Had any of Lamb's claims survived summary judgment, the Court would note that Lamb's cause of action against KDOC would be barred by the Eleventh Amendment. KDOC is a state agency, and "[a]ctions commenced pursuant to 42 U.S.C. § 1983 cannot be brought against the State of Kansas or any state agencies since the state is not a person within the meaning of the Eleventh Amendment of the United States Constitution." *Lee v. McManus*, 589 F. Supp. 633, 638 (D. Kan. 1984); *see also Murray v. Kan. Dep't of Corrs.*, 2009 WL 1617664, at *3 (D. Kan. 2009) ("[B]ecause KDOC is a state agency and state agencies are not subject to suit under 42 U.S.C. § 1983, the Court must dismiss Plaintiff's claims against KDOC brought pursuant to 42 U.S.C. § 1983.").

[48] *Rhodes*, 452 U.S. at 347.

**IT IS FURTHER ORDERED** that the Defendants' Joint Motion to Stay Discovery (Doc. 33) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated this 6th day of July, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE